**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No.: 2:16-cr-00265-GMN-CWH |
| Plaintiff, ) | |
| vs. ) | **ORDER** |
| ) | |
| JOHN JOSEPH SIEMER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

Pending before the Court is Defendant John Joseph Siemer's ("Siemer") Motion to Suppress Wiretap Evidence and Request for an Evidentiary Hearing, (ECF Nos. 905, 942, 1076). The Government filed a Response, (ECF No. 1191), and Siemer filed a Reply, (ECF No. 1262). The Court held hearings on March 5, 2019, (ECF No. 1537), and on April 4, 2019, (ECF No. 1560). Additionally, the Government filed a Supplemental Response, (ECF Nos. 1556, 1557), and Siemer filed a Supplemental Reply, (ECF No. 1558). For the reasons discussed below, Siemer's Motion to Suppress Wiretap Evidence and Request for an Evidentiary Hearing, (ECF No. 905), is **DENIED**.

**I.     BACKGROUND**

The parties are familiar with the facts of this case and the Court will repeat them here only as necessary. Siemer moves to suppress all conversations from wiretap authorizations on the basis that the Government disregarded its duty to minimize unrelated calls under 18 U.S.C. § 2518(5). (Mot. to Suppress ("Mot.") 3:7–9, ECF No. 905). Specifically, Siemer states that "there are approximately 160 individual calls with the subject matter being hockey. Siemer's son is a professional hockey player and would call Siemer before games to pray. This is just an example of the hundreds of calls in which the Government did not minimize pursuant to statute." (*Id.* 4:1–5). In support of his Motion, Siemer submits 1,789 pages of call summaries

which he obtained from the Government through discovery. (Call Summaries, Ex. 1 to Mot., ECF No. 942).

The Government responds that Siemer's broad statement that "there are approximately 160 individual calls with the subject matter being hockey," is unsupported by any details or citation to the record, and "is insufficient for Defendant to show the Government failed to use reasonable measures to limit interceptions." (Resp. 5:18–22, ECF No. 1191). The Government further contends that "[Siemer's] claims are not sufficiently detailed to warrant granting an evidentiary hearing on the motion." (*Id.* 6:17–19).

Siemer replies that "[t]he Government's boilerplate response to the Motion to Suppress emphasizes the need for an evidentiary hearing. A hearing will allow for evidence to be produced such as a minimization log and the testimony of agents involved with intercepting phone calls that were not properly minimized. The system used to ensure calls were minimized was never disclosed." (Reply 2:6–10, ECF No. 1262).

On March 5, 2019, a status conference was held on several pending pretrial motions. (Mins. of Proceedings, ECF No. 1537). At that time, the Court heard oral argument on Siemer's Motion to Suppress. (*Id.*). The Government submitted several memoranda containing the minimization instructions which monitoring agents and contractors were required to review. (*See* Exs. 1A–1G, ECF No. 1537). Further, the Government presented a recording orally summarizing the contents of the memoranda. (*See* Ex. 2, ECF No. 1537). Special Agent Matthew Neal ("Agent Neal"), the supervising case agent during the relevant wiretap intercepts, testified that the recording was presented to all monitoring agents and contractors. He also provided testimony regarding the minimization memorandum and other minimization procedures. The Court took the Motion under submission.

On April 3, 2019, the Government filed a Supplemental Response to Defendant's Motion, (ECF Nos. 1556, 1557), consisting of two sets of documents: (1) Agent Neal's

redacted time and attendance reports from August 15, 2010, to May 31, 2011; and (2) copies of the 15-day reports submitted to the U.S. District Court for the Central District of California—the court that authorized the federal wiretap orders in this case. Siemer filed a Supplemental Reply, (ECF No. 1558), arguing *inter alia*, that the Court should be concerned that "[Agent Neal] is employing lay citizens to do the work of professional law enforcement to minimize and protect the rights of people . . . ." (*Id.* 2:22–26).

On April 4, 2019, the Court heard further argument on Siemer's Motion to Suppress. (Mins. of Proceedings, ECF No. 1560). The Government argued that Agent Neal's time and attendance records demonstrate his first-hand knowledge that monitoring agents and contractors reviewed and signed the minimization memorandum. Defense counsel noted that the 15-day report for the period of September 29, 2010, through October 11, 2010, showed there were 518 voice calls and of those calls two were minimized. Relying on this information, and the fact that the Government used contractors to monitor the intercepted phone calls, defense counsel argued the Government did not meet the minimization standard. The Court took the matter under submission. This Order follows.

## II.  **LEGAL STANDARD**

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 requires that wiretapping "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception . . . ." 18 U.S.C. § 2518(5). Minimization requires that the Government adopt reasonable measures to reduce to a practical minimum the interception of conversations unrelated to the criminal activity under investigation, while permitting the Government to pursue legitimate investigation. *United States v. Torres*, 908 F.2d 1417, 1423 (9th Cir. 1990); *United States v. McGuire*, 307 F.3d 1192, 1199 (9th Cir. 2002). The statute does not forbid the interception of all nonrelevant communications, but "instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception of such

conversations." *Scott v. United States*, 436 U.S. 128, 140 (1978). The Government has the burden of demonstrating that it has complied with the minimization requirement. *United States v. Rivera*, 527 F.3d 891, 904 (9th Cir. 2008).

Suppression may be appropriate in cases where it is clear the Government disregarded the minimization provision throughout the wiretap authorization period. *See United States v. Turner*, 528 F.2d 143, 156 (9th Cir. 1974). The question whether the government complied with the statutory requirement to minimize surveillance by wiretap requires examination of the monitoring officers' conduct in light of the particular circumstances of the case. *McGuire*, 307 F.3d at 1199–2000.

### III. DISCUSSION

#### A. Standing

Several of Siemer's co-defendants have joined the instant Motion to Suppress. Those co-defendants are Palafox, Perez, Gonzalez, Ramirez, Henderson, Coleman, Campos, Garcia, Juarez, and Davisson. (*See* Min. Order, ECF No. 1476). The Government maintains that Palafox, Garcia, Ramirez, Coleman, and Davisson lack standing to bring the instant Motion because they "were not named in the wiretap order, nor were their communications intercepted on [Siemer's phone]."[1] (Resp. 4:12–17, ECF No. 1191).

Standing is governed by 18 U.S.C. § 2518(10)(a), which provides that

> Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that
>    (i) the communication was unlawfully intercepted;

---

[1] Neither the Government nor the defendants specify which wiretap authorization periods are at issue. The call summaries Siemer provides contain calls dated September 29, 2010, through May 28, 2011. Thus, for standing purposes, the Court will consider wiretap applications and court orders covering September 29, 2010, to May 28, 2011.

> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
> (iii) the interception was not made in conformity with the order of authorization or approval.

An aggrieved person is one that was a party to the intercepted wire, "or a person against whom the interception was directed." 18 U.S.C. § 2510(11). The rule of standing under Section 2518(10)(a) is no broader than that of the Fourth Amendment. *See United States v. Taketa*, 923 F.2d 665, 676 (9th Cir. 1991) ("The Supreme Court has read the statutory language to extend standing no further than the normal reach of fourth amendment standing.") (citing *Alderman v. United States*, 394 U.S. 165, 175–76 (1969)). A defendant may move to suppress wiretap evidence if his privacy was "actually invaded." *United States v. King*, 478 F.2d 494, 506 (9th Cir. 1973). An invasion of privacy occurs when the defendant is either a participant in the call or the interception occurred on the defendant's premises. *Id.* A defendant does not have standing where he is only a subject of the conversation. *See generally Light v. United States*, 529 F.2d 94 (9th Cir. 1976).

As an initial matter, Garcia, Davisson, Ramirez, and Coleman were neither named as target subjects in any wiretap order, nor were they intercepted as a result. Therefore, they are not aggrieved persons and lack standing to bring the instant challenge.[2] Regarding the remaining wiretap authorizations, the Court finds that the following defendants have standing to challenge one or more of the wiretaps because they were either intercepted or a target subject—and joined Siemer's Motion to Suppress. (Min. Order, ECF No. 1476); (*see generally* Exs. to Palafox Mot. to Suppress, ECF Nos. 1198–1202) (containing wiretap applications, affidavits, and orders for relevant wiretap authorization periods).

///

---

[2] Pending before the Court is Coleman's Motion for Joinder, (ECF No. 1312), to Siemer's Reply, (ECF No. 1262). Because Coleman lacks standing to bring the instant minimization challenge, Coleman's Motion for Joinder to Siemer's Reply is **DENIED**.

| September 2010 | Palafox, Juarez |
| October 2010 | Palafox, Perez, Campos, Juarez, Henderson |
| November 2010 | Palafox, Perez, Campos, Juarez, Henderson |
| December 2010 | Palafox, Perez, Gonzalez, Campos, Juarez |
| January 2011 | Palafox, Perez, Gonzalez, Juarez |
| March 2011 | Palafox, Perez, Juarez |
| April 1, 2011 | Palafox, Perez, Juarez |
| April 29, 2011 | Palafox, Perez, Campos, Juarez |

### B. Minimization

The Government has the burden of demonstrating that it has complied with the minimization requirement. *United States v. Rivera*, 527 F.3d 891, 904 (9th Cir. 2008). However, in cases where a defendant does not challenge the admission into evidence of any specific intercepted conversation, a court need only examine whether the Government has made a prima facie case of compliance with the minimization requirement. *Torres*, 908 F.2d at 1423. The Government's burden can be established on the basis of affidavits, supplemented by logs and tapes to make the necessary showing. *United States v. Santora*, 600 F.2d 1317, 1320, *amended by* 609 F.2d 433 (9th Cir. 1979).

Here, although Siemer's Motion provides one specific example where Siemer believes the monitoring agents did not properly minimize, Siemer does not challenge the introduction of any specific conversations into evidence.[3] Therefore, the Court need only examine whether the

---

[3] Siemer's Motion to Suppress primarily focuses on intercepted calls between Siemer and his son, and the Government's alleged failure to minimize those calls. (Mot. 4:1–5). However, at the March 5, 2019 hearing, the Government represented to the Court that it does not intend to offer any recorded conversation in which Siemer's son was involved.

Government has made a prima facie case of compliance with the minimization requirement. *Torres*, 908 F.2d at 1423.

To satisfy its prima facie case, the Government detailed several procedures, which it argues comply with the minimization requirement. During the March 5, 2019 hearing, Agent Neal testified that all monitoring agents and contractors (collectively "monitors") were obligated to read a memorandum containing minimization instructions prior to conducting any monitoring. Additionally, monitors were required to read the application seeking an order authorizing the interception of wire communications ("application"), the affidavit in support of the application, and the court order authorizing the intercept of wire communications. Agent Neal testified that he instructed the monitors to sign the memorandum to acknowledge that they have read each of the documents.[4] Agent Neal further testified that he ensured a copy of each document was always available in the wire room for the monitors' review.

In addition to the written minimization instructions contained in the memorandum, a recorded summary of the instructions was played for the monitors. (*See* Ex. 2, ECF No. 1537). Agent Neal further testified that contact information for the AUSA assigned to supervise the investigation, as well as Agent Neal's contact information, was posted on the wall of the wire room so monitors could reach them with questions.[5] Moreover, at least one agent (*i.e.*, law enforcement officer) supervised the wire room at all times.

---

[4] The Government was unable to provide the Court with a copy of the signed memorandum covering the period of September 28, 2010, through October 28, 2010. (*See* Ex. 1B, ECF No. 1537). However, Agent Neal testified that to the best of his knowledge the memorandum was signed and reviewed by all monitors. The Government submitted Agent Neal's time and attendance records for this time period, showing that Agent Neal did not take any extended vacations and was on duty at least 32 hours per week. (Records, Ex. 1 to Suppl. Resp., ECF No. 1556). As such, the Court is satisfied the Agent Neal has sufficient personal knowledge regarding this matter.

[5] Additionally, the memorandum provides: "If you have any questions at any time concerning the interception, do not hesitate to contact [the supervising case agent or supervising attorney]. It is much better to ask questions when issues arise, even if it means calling in the middle of the night, than not to ask the question." (*See, e.g.*, Ex. 1B at 2, ECF No. 1537).

Siemer, however, argues the Government failed to adopt reasonable measures to minimize the interception of non-pertinent calls, and therefore, failed to comply with the minimization requirement. Specifically, Siemer takes issue with the 15-day report covering September 29, 2010, through October 11, 2010, which shows that monitors minimized two of 518 voice calls. (*See* Ex. 2b at 24–25, ECF No. 1557-2). Siemer argues this number of minimized phone calls, taken together with the fact that some of the monitors were contractors—not law enforcement agents—demonstrates the Government failed to properly minimize. But case law and Section 2518(5) of the wiretap statute do not support Siemer's argument.

The Ninth Circuit has repeatedly held that the fact law enforcement intercepts and does not minimize virtually every call does not necessarily mean proper minimization did not occur. *See United States v. Homick*, 964 F.2d 899, 903 (9th Cir. 1992); *McGuire*, 307 F.3d at 1201 (discussing *Scott* case, finding the minimization techniques used "do not need to be optimal, only reasonable."); *see also Scott*, 436 U.S. at 132 (law enforcement intercepted virtually all calls, even though only 40 percent were narcotics-related, and Court held conduct was not unreasonable under the circumstances). As explained in *Homick*, "[b]ecause many telephone calls are brief in duration, a listener frequently cannot determine a particular call's relevance to the investigation before the call has been completed." *Id.* Moreover, as to non-law enforcement officers monitoring intercepted communications, the wiretap statute explicitly provides: "An interception under this chapter may be conducted in whole or in part by Government personnel, *or by an individual operating under a contract with the Government*, acting under the supervision of an investigative or law enforcement officer authorized to conduct the interception." 18 U.S.C. § 2518(5) (emphasis added). That is precisely what happened here—contractors acted under the supervision of law enforcement officers authorized to conduct the intercepts. In sum, Siemer's argument is unpersuasive.

The Court finds that the Government has made a prima facie showing of compliance with the minimization requirement. Various factors are present in the instant case that support a finding that the minimization procedures were reasonable: monitoring agents and contractors were instructed on the minimization requirements; the presence of supervising agents in the wire room when interceptions were occurring; and an AUSA and supervising agent were on call. *See Torres*, 908 F.2d at 1423. As such, the Government has met its burden to show proper minimization. Accordingly, Siemer's Motion to Suppress Wiretap Evidence is **DENIED**.

### C. Request for Evidentiary Hearing

The Ninth Circuit has held that an evidentiary hearing on a motion to suppress need only be held if the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the court to conclude that contested issues of material fact exist. *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (citing *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990); *United States v. Irwin*, 613 F.2d 1182, 1187 (9th Cir. 1980); *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972) ("Evidentiary hearings need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that relief must be granted if the facts alleged are proved.")). "A hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one. Rather, the defendant must demonstrate that a 'significant disputed factual issue' exists such that a hearing is required." *Howell*, 231 F.3d at 621 (citing *Harris*, 914 F.2d at 933). The determination of whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court. *United States v. Santora*, 600 F.2d 1317, 1320 (9th Cir. 1979), *amended by* 609 F.2d 433 (9th Cir. 1979).

Here, Siemer's Motion fails to allege facts with sufficient definiteness, clarity, and specificity to enable the Court to conclude that relief must be granted if the facts alleged are

proved. For example, the Motion contends that "[t]he overwhelming majority of the intercepted calls should have been minimized . . . ." (Mot. 2:7–9). Yet, Siemer fails to indicate what number of calls constitutes the "majority." While he provides 1,789 pages of call summaries, Siemer does not indicate how many calls are summarized within those pages, or how many of those calls were longer or shorter than two minutes. *See Homick*, 964 F.2d at 903 (holding that the Government's instruction to agents to listen to all conversations for two minutes and to then terminate non-pertinent calls after that time did not violate Section 2518(5) of the wiretap statute); *Rivera*, 527 F.3d at 905 (holding that a minimization provision that allowed a call to be intercepted for a "reasonable time, usually not more than two minutes to determine whether the conversation concerns criminal activities" was adequate). Siemer's Motion also contends "there are approximately 160 individual calls with the subject matter being hockey." (Mot. 4:1–2). But even if true, that does not mean matters pertinent to the investigation were not also discussed during those calls. Further, taking into consideration the hearings that took place on March 5, 2019 and April 4, 2019, Siemer nevertheless fails to make the requisite showing. (*See* Part III.B *infra*). Accordingly, Siemer's request for an evidentiary hearing on the Motion to Suppress is **DENIED**.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that that Siemer's Motion to Suppress Wiretap Evidence & Request an Evidentiary Hearing, (ECF No. 905), is **DENIED**.

**IT IS FURTHER ORDERED** that Coleman's Motion for Joinder to Siemer's Reply, (ECF No. 1312), is **DENIED**.

**DATED** this \_\_26\_\_ day of July, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court